UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES CODY, JR.,                    )
                                    )
            Petitioner,             )
                                    )
       v.                           )       No. 4:09 CV 301 ERW / DDN
                                    )
 TROY STEELE,                       )
                                    )
            Respondent.             )


**REPORT AND RECOMMENDATION**

This action is before the court upon the petition of Missouri state prisoner James Cody, Jr. for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). (Doc. 17.) For the reasons set forth below, the undersigned recommends that the petition for a writ of habeas corpus be denied.


**I. BACKGROUND**

On October 9 and 10, 2003, following a trial of two consolidated cases, a jury in the Circuit Court of the City of St. Louis found petitioner James Cody, Jr. guilty of one count of forcible rape, four counts of forcible sodomy, one count of kidnaping, and one count of sexual abuse (Case No. 021-2274),[1] and guilty of one count of attempted forcible rape, one count of felonious restraint, and one count of second-degree robbery (Case No. 021-4481). (Doc. 11, Ex. C at 178-81.)

On December 12, 2003, the trial court, finding petitioner to be a prior and persistent offender,[2] sentenced him in Case No. 021-2274 to 25 years for the forcible rape conviction, 25 years on each of the forcible sodomy convictions, 15 years on the kidnaping conviction, and 15 years on the sexual abuse conviction, and in Case No. 021-4481 to 15 years

--------

[1]The jury also found petitioner not guilty of second-degree robbery (Case No. 021-2274). (Doc. 11, Ex. C at 179.)

[2]The trial court noted that petitioner had previously been convicted of first-degree tampering and second-degree burglary.

imprisonment on the attempted forcible rape conviction, 15 years on the felonious restraint conviction, and 15 years on the second-degree robbery conviction. (Id. at 168-92.) The court ordered the forcible rape, sodomy, and sexual abuse sentences in Case No. 021-2274 and the attempted forcible rape sentence in Case No. 021-4481 to run concurrently for a total imprisonment time of 25 years. (Id.) The court also ordered the kidnaping sentence in Case No. 021-2274 and the felonious restraint and second-degree robbery sentences in Case No. 021-4481 to run concurrently for a total of 15 years, but consecutively to the other sentences, resulting in a total sentence of 40 years imprisonment. (Id.)

On January 11, 2005, the Missouri Court of Appeals affirmed the judgment on direct appeal. State v. Cody, 155 S.W.3d 772 (Mo. Ct. App. 2005) (per curiam); (Doc. 11, Ex. D.) On March 28, 2005, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Doc. 11, Ex. G at 4-14, 24-59.) Hearings were held on February 22 and March 22, 2007. (Id. at 111.) On June 1, 2007, the Missouri circuit court denied the motion for post-conviction relief. (Id. at 111-29.) On June 17, 2008, the Missouri Court of Appeals affirmed the denial of petitioner's motion for post-conviction relief. Cody v. State, 255 S.W.3d 535 (Mo. Ct. App. 2008) (per curiam); (Doc. 11, Ex. H.).

On February 23, 2009, petitioner filed the instant federal petition for a writ of habeas corpus. (Doc. 1.)

In denying petitioner's direct appeal from his convictions, the Missouri Court of Appeals described the underlying facts, viewed in the light most favorable to the verdict, thus:

> On February 23, 2002 at about 5:00 a.m., while J.J. waited at a bus stop in the dark, she was approached by [petitioner]. J.J. testified that she had never seen [petitioner] before. [Petitioner] asked J.J. if he could use her "shooter," which J.J. believed was a crack pipe. Although J.J. told [petitioner] she did not have one and that she did not smoke crack, he persisted in asking her for one. J.J. tried to walk away from [petitioner], but he blocked her path. As he continued to block her path, [petitioner] told her, "Bitch, I don't know why you're doing this, you know, I'm going to get you wherever you go." As J.J. attempted to get back to her apartment, a blue car with two men in it

- 2 -

pulled up and blocked her way. [Petitioner] grabbed her from behind and dragged her back toward the bus stop. While restraining her with his arms, [petitioner] twice told J.J. that she "better tell [him] that that's what [she] was out there for." After [petitioner] dragged J.J. to a vacant lot, he broke the top off the can of mace she was holding. He told her that "it better be good" and that "she better not try anything" or she "wouldn't be making it up out of here." J.J., fearing for her life, stopped resisting.

[Petitioner] then dragged J.J. down an alley and into a "cubbyhole" in the back of an abandoned building. [Petitioner] demanded all of J.J's money, but she told him that she only had enough for bus fare. [Petitioner] then shoved her down onto two couch cushions and told her to take one leg of her pants off and lie down. J.J. complied with his demand. [Petitioner] unzipped his pants, but did not take them off. He then lay on top of J.J. and began kissing her. [Petitioner] told J.J. to take his penis and put it inside her. J.J. tried to comply, but she could only get it part way in because [petitioner] had lost his erection. [Petitioner] told her to quit shaking and pulled up her shirt and bra and began sucking on her breasts. [Petitioner] made another attempt to penetrate her, but he again lost his erection. [Petitioner] then inserted his fingers into her rectum and vagina. After another failed attempt to penetrate her, [petitioner] told J.J. to "play with herself." While she did so, [petitioner] began masturbating and then inserted his penis inside J.J. and ejaculated.

[Petitioner] asked J.J. if she needed any money. J.J. replied that she didn't need any money and offered to give [petitioner] a dollar in an effort to prevent him from searching her for money.

On May 23, 2002, at about 10:30 p.m., R.H's car broke down just a block from [petitioner]'s residence. Five men, including [petitioner], approached R.H. to assist her. After R.H. said that she did not need help, all the men left except for [petitioner]. [Petitioner], whom R.H. testified that she had never seen before, insisted on helping her and blocked her path as she tried to walk away. [Petitioner] told her it was safe to go to his house to use his phone. R.H. followed [petitioner] to his residence, but attempted to flee after she entered the house and realized that [petitioner] did not have a phone. [Petitioner] grabbed R.H. from behind by her hair and pulled her back, causing her to fall to the sidewalk. [Petitioner] stood over R.H. as she tried to get up. R.H. asked [petitioner] if he needed money. After he said that he did, R.H. gave [petitioner] $20.00. [Petitioner] then insisted that R.H. smoke with him.

R.H. attempted to flee, but she tripped and fell and [petitioner] grabbed her by the throat and signaled for her to be quiet when she attempted to yell. When she tried to run away again, [petitioner] grabbed her around the waist, put his hand over her mouth, and tried to kiss her on the

side of her neck. [Petitioner] then told R.H. that he wanted sex. R.H. said no, but [petitioner] insisted on having sex and pulled her arms behind her. After hearing [petitioner]'s zipper go down, R.H. kicked back, broke free from [petitioner]'s grip, and began running. Although [petitioner] chased R.H. and grabbed her by the shirt and purse, he did not catch up with her after R.H. released her purse and left it behind.

In regard to the February 23 incident involving J.J., [petitioner] was charged with forcible rape (Count I), forcible sodomy (Counts II, III, IV, and V), kidnaping (Count VI), second-degree robbery (Count VII), and sexual abuse (Count VIII). In regard to the May 23 incident involving R.H., [petitioner] was charged with attempted forcible rape (Count IX), felonious restraint (Count X), and second-degree robbery (Count XI). The trial court ordered all of the charges, which were contained in two separate indictments, joined for purposes of trial, and overruled [petitioner]'s motion to sever the charges.

[Petitioner] testified that both J.J. and R.H. were lying about the attacks. [Petitioner] testified that he had known J.J., whom he repeatedly referred to as the wrong name even though his counsel and the court attempted to correct him, since 2001. J.J. testified on rebuttal that she lived in Illinois and Indiana in 2001 and that she first moved to St. Louis in 2002. [Petitioner] referred to J.J. as a crack smoker and friend with whom he liked to get high. [Petitioner] claimed that he had had sex with J.J. at least one time before the February 23 incident. He testified that he didn't force J.J. to have sex, but that it was consensual.

[Petitioner] testified that he helped R.H. fix her car and that she voluntarily gave him $20.00 for the repairs and that he gave her $5.00 in change. [Petitioner] denied that he had tried to rape R.H. or that he had kissed her neck and asked for sex.

(Doc. 11, Ex. D at 2-4.)

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

On February 23, 2009, petitioner filed the instant petition for federal habeas relief. Petitioner claims eight grounds for relief:

(1) The trial court erred in denying his motion to sever Counts I-VIII, which pertained to the February 23 incident, from Counts IX-XI, which pertained to the May 23 incident.

(2) The trial court erred in denying his motion for judgment of acquittal with respect to Count IX, attempted forcible rape, due to lack of a "substantial step."

(3)   The trial court erred in submitting a jury instruction that failed to instruct the jury that, with regard to Count X, they must find that he had acted "knowingly" in committing felonious restraint.

(4)   The trial court erred in denying his motion for a mistrial after the prosecution read the indictment to the jury to bolster the accusing witness's credibility and rebut petitioner's defense.

(5)   He received ineffective assistance of counsel because counsel failed to move to strike jurors Shah and Tibbs for potential bias.

(6)   He received ineffective assistance of counsel because counsel failed to reasonably prepare him to testify at trial.

(7)   He received ineffective assistance of counsel because counsel failed to investigate and call witness Richard McGowan to testify at trial to the fact that petitioner and J.J. previously knew each other.

(8)   He received ineffective assistance of counsel because counsel failed to prepare him to testify, fell asleep during the reading of jury instructions, delivered a poor closing statement, and called the complaining witness by the wrong name during trial.

Respondent contends that petitioner's grounds for federal habeas relief lack merit. Respondent does not dispute that petitioner has exhausted his state court remedies, except as to the portion of Ground 8 alleging that counsel fell asleep during the reading of jury instructions, which respondent asserts is procedurally defaulted. (Doc. 10.) The court considers the grounds seriatim.

### III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state court remedies for the grounds they allege in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limited opportunities in Missouri courts for raising issues on direct

appeal[3] and in motions for post-conviction relief,[4] no proper procedure remains available to petitioner for litigating his federal habeas corpus claim in Ground 8 that his trial counsel was constitutionally ineffective for falling asleep during the reading of jury instructions. <u>Grass v. Reitz</u>, 643 F.3d 579, 584 (8th Cir. 2011).

Exhaustion in the sense that petitioner has no remaining procedure for presenting a ground to a state court does not, however, satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground, in its factual circumstances and with its legal basis, to the state trial and appellate courts. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (per curiam); <u>King v. Kemna</u>, 266 F.3d 816, 821 (8th Cir. 2001) (en banc) . If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, his ground for federal habeas relief is barred from being considered by the federal courts. <u>Grass</u>, 643 F.3d at 584; <u>King</u>, 266 F.3d at 821.

In his amended Rule 29.15 motion for post conviction relief, petitioner argued that his trial counsel was constitutionally ineffective for falling asleep during trial. (Doc. 11, Ex. G at 6, 34-37.) The circuit court denied relief on this ground. (<u>Id.</u> at 122-24.) Petitioner did not raise this argument on appeal from the denial of his motion for post conviction relief. (Doc. 11, Exs. E, H.) Therefore, this portion of Ground 8 is procedurally barred from consideration by this court.

Nevertheless, a petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can demonstrate that failure to review the ground would result in a fundamental miscarriage of justice. <u>Maples v. Thomas</u>, --- S. Ct. ---,

---

[3]A convicted defendant has 10 days to file an appeal after the judgment or order appealed from becomes final. Mo. S. Ct. R. 30.01(d).

[4]A Missouri state prisoner has 90 days to file a motion for post-conviction relief after the date the mandate of the appellate court is issued affirming the judgment or sentence. Mo. S. Ct. R. 29.15(b).

2012 WL 125438, at *9 (2012); <u>Coleman v. Thompson</u>, 501 U.S. 722, 749-50 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. <u>Maples</u>, 2012 WL 125438, at *10; <u>Coleman</u>, 501 U.S. at 750-52.

To establish actual prejudice, the petitioner must demonstrate that the alleged errors "worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1141 (8th Cir. 1999) (citations omitted); <u>see also</u> <u>Charron v. Gammon</u>, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice needed to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under <u>Strickland</u>.").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a federal habeas court to reach the merits of a procedurally defaulted claim. <u>Id.</u> at 316. The requirement set forth in <u>Schlup</u> means that an habeas petitioner must

> come forward not only with new reliable evidence which was not presented at trial, but [] come forward with new reliable evidence which was not available at trial through the exercise of due diligence.

<u>Kidd v. Norman</u>, 651 F.3d 947, 953 (8th Cir. 2011).

Petitioner has not alleged that any external factor prevented him from raising his claim in Ground 8 in the proper forum. (Doc. 1.) Nor has he asserted his actual innocence or demonstrated that failure to review his claims would represent a "fundamental miscarriage of justice." <u>Schlup</u>, 513 U.S. at 324.

Nevertheless, Congress has authorized this court to consider barred grounds for relief on their merits, if the court concludes that

the grounds are without merit. § 2254(b)(2). As stated above, respondent asserts that none of petitioner's federal grounds for relief have merit.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

A state court's decision is contrary to clearly established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 130 S. Ct. 1171, 1174 (2010)(per curiam) (citation omitted). This standard is "difficult to meet" because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 130 S. Ct. at 1174.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 130 S. Ct. 841, 845 (2010). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that

factual findings lack evidentiary support is required to grant habeas relief.  28 U.S.C. § 2254(e)(1); <u>Wood</u>, 130 S. Ct. at 845.


# V.  DISCUSSION

**GROUND 1**

In Ground 1, petitioner claims that the trial court erred in denying his motion to sever Counts I-VIII, pertaining to the February 23 incident, from Counts IX-XI, pertaining to the May 23 incident, and that the error resulted in substantial prejudice.  (Doc. 1 at 5.)

Petitioner was charged in separate indictments for the February 23 incident and the May 23 incident.  (Doc. 11, Ex. C at 13-15, 18-21.) The state moved to join the charges for trial.  (<u>Id.</u> at 92-100.)  The trial court granted the state's motion.  (<u>Id.</u> at 103.)  Petitioner subsequently moved to sever the charges.  (<u>Id.</u> at 104-07.)  The trial court denied petitioner's motion.  (Doc. 11, Ex. D at 9.)  On direct appeal, petitioner argued that the trial court erred in denying his motion to sever because the February 23 incident was not of the same or similar character and did not constitute a common plan or scheme as the May 23 incident.  Petitioner also argued that the trial court's denial of his motion substantially prejudiced him because the jury could not compartmentalize the evidence relating to each incident because he had different defenses to the two incidents.  (<u>Id.</u> at 9-12.)

The Missouri Court of Appeals rejected petitioner's argument, holding that the February 23 and May 23 incidents were sufficiently similar to permit joinder:

> In this case, the tactics [petitioner] used were similar.  Both incidents involved [petitioner], under pretense of friendliness or helpfulness, approaching an adult female alone on the street while it was dark.  Both incidents occurred near each other and to [petitioner]'s residence. The incidents occurred only three months apart.  In both cases, [petitioner] blocked the path of the women when they tried to get away from him and eventually grabbed each woman holding each against her will. [Petitioner] raped one victim and attempted to rape the other victim.  In both cases,

[petitioner] attempted to get the victims to smoke crack with
him. [Petitioner] took money from both victims.

(Id. at 10, 11.)   The Missouri Court of Appeals also rejected
petitioner's argument that the jury was unable to compartmentalize the
evidence:

> The offenses in this case were not numerous or overly
> complex.  The eleven counts submitted to the jury arose from
> just two separate incidents, each involving one of only two
> victims.  Each victim testified about what happened in her
> own case, one speaking English and the other requiring a
> translator for her Spanish.  There is nothing in the record
> to indicate that the jury was unable to distinguish the
> evidence between the two incidents.  In fact, the evidence
> in each was quite distinctive.  One involved a broken down
> car, the quest for a telephone, entering [petitioner]'s own
> house, and a Spanish speaking victim who thwarted
> [petitioner]'s rape attempt, running away leaving her purse
> behind.  The other involved an English speaking victim who
> was actually raped and who gave a detailed account of the
> rape, a victim with whom [petitioner] claimed to have been
> friends, smoked crack and had sex in the past, someone whom
> he continually called by the wrong name.
> Additionally, each incident involved the testimony of
> different police officers.  The victims' and officers'
> testimony bearing out the facts of the incidents was
> uncomplicated.  Each offense was set out in a separate
> instruction, and the jury was specifically instructed that
> each count and the evidence and law applicable to it must be
> considered separately.  Nothing in the record indicates that
> the jury was unable to distinguish what evidence was relevant
> to each victim and each count.  In fact, the jury found
> [petitioner] not guilty on Count VII, the second-degree
> robbery charge pertaining to the February 23 incident
> involving J.J.

(Id. at 11, 12.)

"[T]he decision to join offenses in a single trial is a matter
within the discretion of the trial judge under both Missouri and federal
law" and "may normally be disturbed on review."  Robinson v. Wyrick, 735
F.2d 1091, 1094 (8th Cir. 1984).  A habeas petitioner is not entitled
to relief on the grounds that he was entitled to a severance unless he
can show that a joint trial was "fundamentally unfair."  Wharton-El v.
Nix, 38 F.3d 372, 374 (8th Cir. 1994).  The petitioner bears the burden
of showing a reasonable probability that the error complained of
affected the outcome of the trial.  Anderson v. Goeke, 44 F.3d 675, 679

(8th Cir. 1995). The state court's decision that the February 23 and May 23 incidents were of a sufficiently similar nature so as to permit joinder of the charges arising therefrom is presumed correct. <u>Wharton-El</u>, 38 F.3d at 375.

Petitioner has not shown that joinder of the charges arising out of the February 23 incident with the charges arising out of the May 23 incident was improper. The February 23 and the May 23 incidents were sufficiently similar to have been joined because both events involved petitioner, near his home, grabbing a woman, holding her against her will, raping one and attempting to rape the other, taking money, and attempting to get the victim to do drugs with him. Thus, joinder was proper under Missouri law. <u>See</u> Mo. S. Ct. R. 23.05 (permitting joinder of "[a]ll offenses that are of the same or similar character"); Mo. Rev. Stat. § 545.140(2) (same); <u>see also</u> Fed. R. Crim. P. 8(a) (permitting joinder of offenses that are of the "same or similar character")

Nor has petitioner shown that the charges should have been severed. Each of the two incidents took place on a different day and involved different alleged victims. The evidence presented as to each incident, including the testimony of different police officers, was distinct. There is no indication that the jury was confused by the multiple counts. On the contrary, the jury acquitted petitioner of the second-degree robbery charge arising from the February 23 incident, demonstrating that the jury found each count distinct and considered each separately. <u>Robinson</u>, 735 F.2d at 1094. Petitioner has not shown that joinder of the charges or denial of his motion to sever were either contrary to, or involved an unreasonable application of, clearly established federal law.

Therefore, Ground 1 is without merit.


**GROUND 2**

In Ground 2, petitioner claims that the trial court erred in overruling his motion for judgment of acquittal with respect to Count IX, attempted forcible rape of R.H. Petitioner argues that the state failed to establish that he took a substantial step toward raping R.H. and that he acted with the purpose of raping R.H. (Doc. 1 at 6, 7.)

Under Missouri law, the crime of "attempt to commit an offense" consists of two elements: "(1) the defendant has the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." Mo. Rev. Stat. § 564.011(1); State v. Withrow, 8 S.W.3d 75, 78 (Mo. 1999) (en banc). A substantial step is conduct that is "strongly corroborative of the firmness of the actor's purpose to complete the commission of the crime." Mo. Rev. Stat § 564.011(1); Withrow, 8 S.W.3d at 78.

At trial, the court instructed the jury to find petitioner guilty if it found and believed from the evidence, beyond a reasonable doubt:

> First, that on or about May 23, 2002, in the City of St. Louis, State of Missouri,[petitioner] grabbed [R.H.] from behind, held her hands behind her back preventing her from leaving, kissed her neck, stated that he wanted sex[,] and unzipped his zipper, and
> Second, that such conduct was a substantial step toward the commission of the offense of forcible rape of [R.H.], and
> Third, that [petitioner] engaged in such conduct for the purpose of committing such forcible rape,
> then you will find [petitioner] guilty under Count IX of an attempt to commit forcible rape.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [petitioner] not guilty of that offense.
> A person commits the crime of forcible rape when the person has sexual intercourse with another person by the use of forcible compulsion.
> As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of [petitioner]'s purpose to complete the commission of the offense of forcible rape.

(Doc. 11, Ex. C at 125, 145; Ex. J at 563.)

On direct appeal, the Missouri Court of Appeals held that the record contained sufficient evidence from which the jury could find beyond a reasonable doubt that petitioner attempted to rape R.H.:

> [Petitioner]'s conduct was strongly corroborative of the firmness of his purpose to rape R.H., and definitely constituted more than mere preparation to rape her. [Petitioner] approached R.H. at night and insisted on helping her with her broken down car. [Petitioner] pressured R.H. to follow him to his residence located nearby with the promise that she could use his phone, when [petitioner] did not even have a phone. When R.H. realized [petitioner] did not have

- 12 -

a phone at his house, she attempted to run away but
[petitioner] grabbed her from behind by her hair. When R.H.
tried to run again, [petitioner] grabbed her by the throat
and signaled for her to be quiet. After R.H. made another
attempt to flee, [petitioner] grabbed her around the waist,
put his hand over her mouth, kissed her on the side of the
neck, and told her he wanted sex. When R.H. heard
[petitioner]'s zipper go down, she kicked back at him, freed
herself, and ran away again with [petitioner] chasing her.

(Doc. 11, Ex. D at 13, 14.)

Sufficient evidence supports a conviction if, "after viewing the
evidence in the light most favorable to the prosecution, *any* rational
trier of fact could have found the essential elements of the crime
beyond a reasonable doubt." Garrison v. Burt, 637 F.3d 849, 854 (8th
Cir. 2011) (citation omitted). Federal habeas review of a state court's
determination of the sufficiency of evidence is "extremely limited."
Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007). Federal
habeas relief is appropriate only if the state court's decision was
"both incorrect *and* unreasonable." Garrison, 637 F.3d at 855. This
strict standard recognizes that it is the province of the fact-finder,
not the court, "to resolve conflicts in the testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts." Id. (citation omitted).

Petitioner has not met his burden for federal habeas relief. The
jury, in finding petitioner guilty of this offense, chose to believe
R.H.'s testimony over petitioner's testimony. At trial, R.H. testified
that petitioner approached her, followed her, pressured her into coming
into his house, chased her when she fled, grabbed her by her hair,
pushed her to the sidewalk, grabbed her tightly by the throat, grabbed
her by the waist, kissed her on the side of the neck, told her
repeatedly that he wanted to have sex, pulled her zipper down, and
unsuccessfully chased her again. (Doc. 11, Ex. J at 436-46.) The jury
was entitled to weigh R.H.'s testimony as it saw fit. See Garrison, 637
F.3d at 855 (rejecting a federal habeas challenge to the sufficiency of
the evidence supporting a conviction on the basis that witness testimony
was not credible). The state court made a reasonable determination that
there was sufficient evidence to support the jury's finding that

petitioner's conduct was indicative of his firmness to commit the crime of forcible rape.

Therefore, Ground 2 is without merit.

**GROUND 3**

In Ground 3, petitioner argues that the trial court erred in submitting a jury instruction that failed to instruct the jury that it must find petitioner had acted "knowingly" in committing felonious restraint, as charged in Count X. (Doc. 1 at 8.)

With respect to the charge of felonious restraint, Count X, the trial court instructed the jury to find petitioner guilty of felonious restraint if it found from the evidence beyond a reasonable doubt:

> First, that on or about May 23, 2002, in the City of St. Louis, State of Missouri, [petitioner] restrained [R.H.] so as to interfere substantially with her liberty, and
> Second, that such restraint was by means of forcible compulsion and was without the consent of [R.H.], and
> Third, that such restraint exposed [R.H.] to a substantial risk of serious physical injury[.]

(Doc. 11, Ex. C at 126.)

The Missouri Approved Instruction (Criminal) for this offense, MAI-CR3d 319.26, also requires a fourth finding: "that in engaging in the conduct submitted in the instruction, the defendant acted knowingly." MAI-CR3d 319.26. This element of the offense was not included in the instruction submitted to the jury. (Doc. 11, Ex. C at 126.)

On direct appeal, the Missouri Court of Appeals recognized this omission, but reasoned that petitioner's mental state was never in issue at trial, as "the only issue at trial was whether the events occurred at all, and not whether [petitioner] had acted 'knowingly.'" (Doc. 11, Ex. D at 6, 7.) The court also noted that petitioner did not object to this instruction, nor did petitioner raise the issue in his motion for a new trial. (Id.)

"Habeas corpus relief may be granted only when an erroneous jury instruction constituted a fundamental defect that resulted in a complete miscarriage of justice, or an omission inconsistent with rudimentary

demands of a fair trial." <u>Louisell v. Dir. of Iowa Dep't of Corrs.</u>, 178 F.3d 1019, 1022 (8th Cir. 1999) (citation omitted); <u>accord</u> <u>Liggins v. Burger</u>, 422 F.3d 642, 651 (8th Cir. 2005). "[A] jury instruction that does not require the jury to find an element of the offense is analyzed for harmless error[.]" <u>Ferguson v. Bruton</u>, 217 F.3d 983, 985 (8th Cir. 2000).

At trial, petitioner did not argue that he unknowingly restrained R.H.; petitioner argued that he did not restrain R.H. at all. (Doc. 11, Ex. J at 494-501, 519.) Based on its verdict, the jury afforded R.H.'s testimony greater credibility and weight than petitioner's testimony. (Doc. 11, Ex. D at 6.) R.H.'s testimony--that petitioner chased her, restrained her, grabbed her by the throat, hair, and shirt, and pulled her to the ground--supports a finding that petitioner's conduct was done knowingly; there was no evidence that petitioner committed the alleged acts with a lesser mental capacity. Thus, omission of the mental state requirement was not a fundamental defect resulting in a miscarriage of justice. <u>Cf.</u> <u>Johns v. Bowersox</u>, 203 F.3d 538, 544 (8th Cir. 2000) (holding that "overwhelming evidence" at trial "rendered any instructional error harmless beyond a reasonable doubt"); <u>Kilmartin v. Dormire</u>, 161 F.3d 1125, 1127 (8th Cir. 1998) (denying federal habeas corpus relief based on an erroneous jury instruction because the findings that would have been required by the omitted instruction were undisputed).

Therefore, Ground 3 is without merit.


**GROUND 4**

In Ground 4, petitioner argues that the trial court erred in denying his motion for a mistrial after the prosecution read the indictment to the jury, which unfairly bolstered the accusing witness's credibility. (Doc. 1 at 10.)

During cross-examination of R.H., petitioner's counsel asked R.H. whether she had previously told anyone that petitioner kissed her on the neck. (Doc. 11, Ex. J at 452, 453.) R.H. answered that she had previously told the police. (<u>Id.</u> at 453.) On redirect examination, the

prosecutor requested that the court take judicial notice of the indictment, the relevant portion of which the prosecutor read aloud:

> That on or about the 23rd day of May, 2002, in the City of St. Louis, State of Missouri, [petitioner] grabbed [R.H.] from behind and held her hands behind her back[,] preventing her from leaving[,] [k]issed her neck[,] and stated that he wanted sex and unzipped his zipper[,] [a]nd such conduct was a substantial step towards the commission of the crime of forcible rape and was done for the purpose of committing such forcible rape.

(Id. at 458; Doc. 11, Ex. C at 13.)

Petitioner's counsel objected to the prosecutor's reading of the indictment and moved for a mistrial. (Doc. 11, Ex. J at 458, 459.) The prosecutor stated that she had read the indictment aloud and requested judicial notice thereof for the purpose of rebutting petitioner's counsel's line of questioning concerning whether R.H. voiced her allegation of the forced kiss prior to trial. (Id. at 459.) The court overruled petitioner's counsel's objection, took judicial notice of Count I of the indictment, and denied petitioner's counsel's motion for a mistrial. (Id. at 459, 460.)

At the close of the state's evidence, petitioner's counsel renewed his motion for a mistrial, arguing that the reading of the indictment to the jury was "highly improper" and "poisoned the whole trial" because it was a non-evidentiary document read to contradict evidentiary testimony. (Doc. 11, Ex. J at 463-67.) The prosecutor argued that the reading of the indictment was offered not as evidence, but in order to rebut petitioner's counsel's suggestion that R.H. had never provided information about the kiss to anyone in the past. (Id. at 465, 466.) The prosecutor also argued that this suggestion was unfair given that petitioner's counsel had been provided with the police report and indictment, both of which contained the allegation, prior to trial. (Id.) The trial court denied petitioner's motion, holding that judicial notice of the indictment was proper for the purposes set out by the prosecutor. (Id. at 467.)

On direct appeal, the Missouri Court of Appeals held that petitioner's counsel "injected this issue into the case" through his questioning when he knew or should have known that it was untrue.

(Doc. 11, Ex. D at 8, 9.)  The court further reasoned that, to the extent corrective action was warranted, petitioner could have sought a less drastic remedy but failed to do so.  (Id. at 9.)

Federal law, like Missouri law, permits "the use of otherwise inadmissible evidence to clarify or rebut an issue opened up by defense counsel on cross-examination."  United States v. Beason, 220 F.3d 964, 968 (8th Cir. 2000); accord State v. Fenton, 941 S.W.2d 810, 813 (Mo. Ct. App. 1997); State v. James, 805 S.W.2d 333, 335 (Mo. Ct. App. 1991).

Petitioner's trial counsel directed his questioning of R.H. to suggest that R.H. had not previously made allegations that petitioner kissed her neck.  (Doc. 11, Ex. J at 452, 453.)  This line of questioning was clearly unsubstantiated, as allegations of the forced kiss were included in the indictment. (Doc. 11, Ex. C at 13.)  As such, the trial court was within its discretion in allowing the prosecutor to read the indictment for the purpose of rebutting petitioner's trial counsel's misleading, unsubstantiated inference.

Therefore, Ground 4 is without merit.


**GROUNDS 5-8: INEFFECTIVE ASSISTANCE OF COUNSEL**

In Grounds 5-8, petitioner alleges ineffective assistance of counsel.  (Doc. 1 at 11-15.)  The right to effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments.  Strickland v. Washington, 466 U.S. 668, 684-85 (1984).  To prevail on a habeas claim of ineffective assistance of counsel, the petitioner must demonstrate two elements: first, that his counsel's performance was professionally deficient, and second, prejudice resulting from the unreasonable representation.  Id. at 687.

Petitioner must first show that his counsel's performance fell below an objective standard of reasonableness.  Id. at 688.  This requires a showing that counsel committed errors so serious that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id. at 687-88.  Second, to satisfy the prejudice requirement, the petitioner must demonstrate that there is "a reasonable probability that but for counsel's unprofessional errors, the result of

the proceeding would have been different." <u>Morales v. Ault</u>, 476 F.3d 545, 550 (8th Cir.), <u>cert. denied</u>, 128 S. Ct. 177 (2007).

Under <u>Strickland</u>, the petitioner must overcome a strong presumption that counsel rendered appropriate assistance. <u>Marcrum v. Luebbers</u>, 509 F.3d 489, 502 (8th Cir. 2007), <u>cert denied</u>, 129 S. Ct. 754 (2008). In considering the merits of a constitutionally ineffective assistance of counsel claim, a reviewing court must be "highly deferential" in determining whether the course of conduct selected by counsel could be considered a sound trial strategy rather than an error. <u>Id.</u> The burden is on the petitioner to show unreasonable representation by counsel and that a challenged action was not sound trial strategy. <u>Id.</u>

**GROUND 5**

In Ground 5, petitioner argues that his trial counsel was constitutionally ineffective because counsel did not move to strike jurors Shah and Tibbs despite their potential bias. (Doc. 1 at 11, 12.)

On appeal from the denial of petitioner's motion for post conviction relief, the Missouri Court of Appeals described the circuit court proceedings relevant to petitioner's argument:

> The trial transcript reveals some questioning of the two jurors at issue. First, when the State asked the jury pool about their past service on criminal juries, Juror Shah answered that she served in a 1979 murder case and no verdict was reached. The State asked, "[a]nything about that experience that you think with your ability to be fair and impartial," and Juror Shah replied no.
>
> Additionally, the State asked the potential jurors whether anyone, in a professional capacity, had ever treated a rape victim. Juror Shah answered that she and a doctor completed a rape kit in the emergency room two years prior, but no trial resulted from the incident. The State asked Juror Shah whether that would affect her ability to listen to the evidence in this case, and Juror Shah answered, "Not at all." Further, the State asked, "Do you think that because you have had the experience of caring for a woman who was a victim of rape that would interfere with your ability to listen to the evidence in this case and make a decision based on the evidence that you heard?" Juror Shah replied no, and that she would be fair to both the State and [petitioner].

Also during voir dire, the State asked the venirepersons whether any of them had been a witness in a criminal case. Juror Shah answered that she had testified for the State in Juvenile Court for child neglect. The State[] asked her if anything about that experience would affect her ability to serve as a juror in this case, and Juror Shah answered no.

The State also asked the potential jurors whether they were acquainted with any of the other potential jurors. Juror Shah and another potential juror, Mr. Bossung, worked at the same hospital, but they did not know each other personally. Juror Shah said she would be willing to express a differing opinion if she had one, and she would be respectful of his opinion.

Additionally, Juror Shah revealed that her brother was a police officer in the City of St. Louis, but that would not affect her ability to be fair and impartial in this case.

Furthermore, the State discussed with Juror Tibbs her professional treatment of a rape victim. Juror Tibbs answered that she treated a sexual abuse survivor in therapy where she dealt with the long-term effects of sexual assault rather than the physical evidence. Juror Tibbs said she encountered multiple people in assessments, but only treated one person in long[-]term treatment. The following exchange then took place:

[State]:  And, do you think because of [your experience,] that that would affect your ability to listen to the evidence in this case?

[Juror Tibbs]:  I don't think so.

[State]:  Would you be able to make a determination of credibility of the witnesses in this case?

[Juror Tibbs]:  I think so.

[State]:  And, would you be able to be fair and impartial to the State?

[Juror Tibbs]:  Yes.

[State]:  And, can you be fair to the defendant?

[Juror Tibbs]:  Yes.

During the post-conviction hearing, which was held more than three years after trial, Trial Counsel testified that he did not specifically remember either one of these two jurors. Trial Counsel stated, "And if I did not ask any additional questions other than which I asked, there would have been so many reasons, I cannot even list them." He indicated that he took notes during voir dire, but returned

his copy to the trial court at the close of the case because a rule required that the copies "be wasted by the clerk."

        The motion court found nothing in the record that revealed any bias from either venirepersons, and nothing that Trial Counsel was ineffective for failing to strike them. The motion court also stated that it "would not have granted a motion to strike either of these venirepersons for cause and there is no basis to conclude that trial counsel should have peremptorily struck these venirepersons."

(Doc. 11, Ex. H at 7-10.) The Missouri Court of Appeals then rejected petitioner's argument, noting that there was no evidence that either juror actually served on the jury. Moreover, even if either juror served on the jury, a motion to strike for cause would have been futile because both jurors expressly stated that they could be fair and impartial. (<u>Id.</u> at 10); <u>cf.</u> <u>United States v. Nazarenus</u>, 983 F.2d 1480, 1484 (8th Cir. 1993) (holding that the district court did not abuse its discretion in refusing to strike jurors who assured their impartiality despite their connections with law enforcement). In addition, assuming jurors Shah and Tibbs served on the jury, petitioner's trial counsel's decision not to use peremptory strikes on them was, in the absence of evidence to the contrary, part of a reasonable trial strategy. (Doc. 11, Ex. H at 11); <u>Hodge v. United States</u>, No. 4:11 CV 316 ERW, 2011 WL 5553517, at *5 (E.D. Mo. 2011) ("[A] decision regarding what jurors should be challenged with peremptory strikes is a question of trial strategy, and the court will not second-guess counsel's decisions." (citation omitted)). Nor has petitioner shown that, assuming jurors Shah and Tibbs served on the jury, their presence on the jury caused him prejudice. (Doc. 11, Ex. H at 11.) Thus, petitioner's Ground 5 fails both requirements of the <u>Strickland</u> standard. The state court's analysis led to a result which was neither contrary to established law, nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

        Therefore, Ground 5 is without merit.


**GROUNDS 6 and 8**

        In Grounds 6 and 8, petitioner claims that his trial counsel was constitutionally ineffective in that his counsel failed to adequately

prepare him to testify at trial, fell asleep during the reading of jury instructions, delivered a poor closing argument, and called the complaining witness by the wrong name. (Doc. 1 at 13, 15.)

In denying petitioner's motion for post conviction relief, the Missouri circuit court stated that it had reviewed the transcript and found that petitioner's trial counsel's misstatement of J.J.'s name was not significant or noticeable and did not effect the outcome of the trial. (Doc. 11, Ex. H at 12.) The Missouri Court of Appeals affirmed, noting that although petitioner's counsel often did not pronounce the "s" at the end of J.J.'s last name, petitioner himself confused J.J.'s first name altogether. (Id.) Moreover, petitioner has not established prejudice arising out of his trial counsel's failure to fully and correctly pronounce the witness's name. Thus, petitioner has not satisfied the second prong of Strickland.

The Missouri Court of Appeals also rejected petitioner's argument that his trial counsel was not adequately prepared:

> Trial Counsel, who had worked with the Public Defender's Office for 17 years and tried hundreds of cases, testified that he had adequate time to prepare this case, he recalled meeting with [petitioner] more than twice before trial, and that he had an "intensive interview" with [petitioner] before trial. Trial Counsel explained during the evidentiary hearing that once they established the consensual sex defense, he repeatedly asked [petitioner] for names of witnesses, endorsed them, and then interviewed the witnesses or sent his investigator to interview them. Trial Counsel also memorized the police report and "brainstormed" by discussing it with [petitioner] and fellow attorneys. Trial Counsel testified that he routinely discusses with clients whether they will testify in court. Trial Counsel said he did not tutor [petitioner] in the leading sense to prepare him to testify, but in general did discuss with [petitioner] the format of the trial, general instructions to stay focused and answer only the question, how Trial Counsel would ask him questions, and how the prosecutor would cross-examine him. Additionally, Trial Counsel stated, "I did the best job any lawyer could do for [petitioner]. It's just that the jury didn't believe him. He was so - he testified so bad during trial. . . . He was a miserable witness."

(Id. at 12, 13.) Petitioner's testimony indicates that he and his counsel were adequately prepared for his testimony. In his testimony, petitioner stated that he previously knew J.J., that the drug use and

sex with J.J. were consensual, and that he never attacked J.J.
Petitioner also testified that he only tried to help fix R.H.'s car and
that he never grabbed, kissed, or tried to rape R.H. (Doc. 11, Ex. J
at 470-520.) That the jury chose to believe the testimony of J.J. and
R.H. over petitioner's testimony does not render petitioner's trial
counsel ineffective. E.g., Delgado v. United States, 162 F.3d 981, 983
(8th Cir. 1998) (rejecting the petitioner's argument that his trial
counsel failed to adequately prepare him for his trial testimony).
Thus, petitioner has failed to satisfy the first prong of Strickland.

The Missouri Court of Appeals also found petitioner's counsel's
closing argument to be "perfectly coherent." (Doc. 11, Ex. H at 14.)
The court explained:

> Trial Counsel's closing statement asking the jury to weigh
> the witnesses' credibility was reasonable trial strategy
> because the outcome of the case depended on whether the jury
> believed [petitioner]. Trial Counsel also reasonably
> discussed [petitioner]'s prior convictions to persuade the
> jury not to convict [petitioner] based on those prior
> convictions, but to use them only to assess credibility.
> Moreover, Trial Counsel articulated that inconsistencies
> existed in the evidence and he told the jury how the evidence
> did not support the charges against [petitioner]. "The
> allegation that counsel gave an ineffective closing argument
> is a matter of trial strategy which does not provide a basis
> for post-conviction relief." The motion court's
> determination that [petitioner] failed to prove Trial Counsel
> was ineffective by being unprepared for trial was not clearly
> erroneous.

(Id. (internal citations omitted).) Petitioner has not argued how his
trial counsel's closing argument was deficient or how any such
deficiencies prejudiced him. Even if his trial counsel's closing
argument could have been better, that does not render his performance
constitutionally deficient. E.g., Parker v. Bowersox, 188 F.3d 923, 928
(8th Cir. 1999) (rejecting a challenge to the adequacy of trial
counsel's closing argument where the closing argument "raised a number
of points in [the petitioner]'s defense"). Thus, as to his allegation
concerning his trial counsel's closing argument, petitioner has failed
to satisfy the first Strickland prong.

As to petitioner's assertion that his trial counsel fell asleep
during the reading of jury instructions, the Missouri circuit court

found this contention unsupported by the record, noting that petitioner's trial counsel denied falling asleep and that the court never observed counsel sleeping. (Doc. 11, Ex. G at 123.) This finding is presumed correct, and petitioner bears the burden of proffering clear and convincing evidence to rebut it. 28 U.S.C. § 2254(e)(1); Wood, 130 S. Ct. at 845. Petitioner has offered no evidence to support his contention that the Missouri circuit court's factual finding was erroneous. Thus, the Missouri circuit court's denial of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

Therefore, Grounds 6 and 8 are without merit.


**GROUND 7**

In Ground 7, petitioner claims that his trial counsel rendered constitutionally ineffective assistance by failing to investigate and call witness Richard McGowan to testify. Petitioner contends that McGowan would have testified that petitioner and J.J. had used crack cocaine together previously, which would have explained why J.J. initially identified another man as her attacker. (Doc. 1 at 14.)

On appeal from the denial of petitioner's motion for post conviction relief, the Missouri Court of Appeals described the relevant facts and circuit court proceedings:

> During the evidentiary hearing, McGowan, who was serving an 11-year sentence for first-degree robbery, testified that he grew up in [petitioner]'s neighborhood, from the time he was 14 or 15 years old. He said he knew J.J. because he saw her purchase narcotics in the neighborhood, in about 2000 or 2001. McGowan testified that he had seen J.J. and [petitioner] together, they "looked like a couple," and were trying to purchase narcotics about that same time period. McGowan said he would have been willing to testify at [petitioner]'s trial in October 2003. McGowan described J.J. as a woman in her mid-twenties who was tall (like the prosecutor, who was 5-feet, 10-inches) and thin with shoulder-length, blonde hair.
> Following McGowan's testimony, the State produced a record that showed J.J. was 4-feet, 11-inches tall, 120 pounds, with brown hair, [and] born on October 10, 1959, thus [making] J.J. was in her early 40s.
> During trial, J.J. testified that she lived in Illinois and Indiana in 2001 and that she moved to St. Louis in

> January 2002. She said she never saw [petitioner] before he
> approached her at the bus stop on February 23, 2002.
>
> The motion court held that [petitioner]'s allegation
> was without merit because McGowan's testimony provided an
> inconsistent description of J.J., was vague and did not
> and/or could not support many of the facts to which
> [petitioner] alleged he would have testified, and was not
> otherwise credible. Further, the motion court found that
> [petitioner]'s trial testimony as to his alleged relationship
> with J.J. was often incoherent and not credible, and that
> McGowan's testimony would not have unqualifiedly supported
> [petitioner]. The motion court found that there was no
> reasonable probability McGowan's testimony would have changed
> the result of the trial or that McGowan would have provided
> [petitioner] with a viable defense.

(Doc. 11, Ex. H at 14, 15.) The Missouri Court of Appeals affirmed the denial of petitioner's claim, reasoning that petitioner's trial counsel may not have been aware of McGowan's potential testimony and that, at best, McGowan's testimony might have impeached J.J.'s assertion that she did not know petitioner before the incident and that she did not move to St. Louis until 2002. (Id. at 16, 17.)

Assuming petitioner's trial counsel was aware of McGowan's potential testimony, his decision not to call McGowan does not give rise to federal habeas relief. "Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001). As explained by the Missouri Court of Appeals, McGowan's testimony would have been of little value. McGowan's description of J.J. was inaccurate and his potential testimony was uncorroborated. At most, McGowan's testimony might have impeached J.J.'s testimony concerning whether J.J. knew petitioner before the incident. "The value of [] unoffered testimony must be substantial to prove [Strickland] prejudice." Walls v. Bowersox, 151 F.3d 827, 834 (8th Cir. 1998) (citation omitted). Petitioner has not shown that his trial counsel's decision not to call McGowan was objectively unreasonable or that the outcome would have been different had McGowan testified. Thus, petitioner has not met either prongs of Strickland.

Therefore, Ground 7 is without merit.

## VI.  CONCLUSION

For the reasons set forth above,

**IT IS HEREBY RECOMMENDED** that the petition of James Cody, Jr. for writ of habeas corpus (Doc. 1) be denied.

The parties are advised that they have until close of business on March 5, 2012, to file written objections to the Report and Recommendation.  The failure to file timely written objections may waive the right to appeal issues of fact.


                        /S/    David D. Noce
                   **UNITED STATES MAGISTRATE JUDGE**

Signed on February 13, 2012.