UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES CODY, JR., | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|   vs. | )   Case No. 4:09CV00301 ERW |
| | ) |
| IAN WALLACE, | ) |
| | ) |
|     Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge David D. Noce [ECF No. 18], pursuant to 28 U.S.C. § 636(b). Petitioner James Cody, Jr. ("Petitioner") has filed Objections [ECF No. 21] to the Report and Recommendation recommending denial of his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1]. As required by 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of those portions of the Report and Recommendation to which Petitioner objects. *See also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003).

**I     FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner James Cody, Jr., is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri, in the custody of the Missouri Department of Corrections. The following facts are taken from *State v. Cody*, 155 S.W.3d 772 (Mo. Ct. App. 2005) (per curiam) (ECF No. 11, Ex. D):

> On February 23, 2002 at about 5:00 a.m., while J.J. waited at a bus stop in the dark, she was approached by [Petitioner]. J.J. testified that she had never seen [Petitioner] before. [Petitioner] asked J.J. if he could use her "shooter," which J.J. believed was a crack pipe. Although J.J. told [petitioner] she did not have one and that she did not smoke crack, he persisted in asking her for one.

J.J. tried to walk away from [Petitioner], but he blocked her path. As he continued to block her path, [Petitioner] told her, "Bitch, I don't know why you're doing this, you know, I'm going to get you wherever you go." As J.J. attempted to get back to her apartment, a blue car with two men in it pulled up and blocked her way. [Petitioner] grabbed her from behind and dragged her back toward the bus stop. While restraining her with his arms, [Petitioner] twice told J.J. that she "better tell [him] that that's what [she] was out there for." After [Petitioner] dragged J.J. to a vacant lot, he broke the top off the can of mace she was holding. He told her that "it better be good" and that "she better not try anything" or she "wouldn't be making it up out of here." J.J., fearing for her life, stopped resisting.

    [Petitioner] then dragged J.J. down an alley and into a "cubbyhole" in the back of an abandoned building. [Petitioner] demanded all of J.J's money, but she told him that she only had enough for bus fare. [Petitioner] then shoved her down onto two couch cushions and told her to take
one leg of her pants off and lie down. J.J. complied with his demand. [Petitioner] unzipped his pants, but did not take them off. He then lay on top of J.J. and began kissing her. [Petitioner] told J.J. to take his penis and put it inside her. J.J. tried to comply, but she could only get it part way in because [petitioner] had lost his erection. [Petitioner] told her to quit shaking and pulled up her shirt
and bra and began sucking on her breasts. [Petitioner] made another attempt to penetrate her, but he again lost his erection. [Petitioner] then inserted his fingers into her rectum and vagina. After another failed attempt to penetrate her, [Petitioner] told J.J. to "play with herself." While she did so, [petitioner] began masturbating and then inserted his penis inside J.J. and ejaculated.

    [Petitioner] asked J.J. if she needed any money. J.J. replied that she didn't need any money and offered to give [Petitioner] a dollar in an effort to prevent him from searching her for money.

    On May 23, 2002, at about 10:30 p.m., R.H's car broke down just a block from [Petitioner]'s residence. Five men, including [Petitioner], approached R.H. to assist her. After R.H. said that she did not need help, all the men left except for [Petitioner]. [Petitioner], whom R.H. testified that she
had never seen before, insisted on helping her and blocked her path as she tried to walk away. [Petitioner] told her it was safe to go to his house to use his phone. R.H. followed [Petitioner] to his residence, but attempted to flee after she entered the house and realized that [Petitioner] did not have a phone. [Petitioner] grabbed R.H. from behind by her hair and pulled her back, causing her to fall to the sidewalk. [Petitioner] stood over R.H. as she tried to get up. R.H. asked [Petitioner] if he needed money. After he said that he did, R.H. gave [Petitioner] $20.00. [Petitioner] then insisted that R.H. smoke with him. R.H. attempted to flee, but she tripped and fell and [Petitioner] grabbed her by the throat and signaled for her to be quiet when she attempted to yell. When she tried to run away again, [petitioner] grabbed her around the waist, put his hand over her mouth, and tried to kiss her on the side of her neck. [Petitioner] then told R.H. that he wanted sex. R.H. said no, but [Petitioner] insisted on having sex and pulled her arms behind her. After hearing [Petitioner]'s zipper go down, R.H. kicked back, broke free from [Petitioner]'s grip, and began

running. Although [Petitioner] chased R.H. and grabbed her by the shirt and purse, he did not catch up with her after R.H. released her purse and left it behind.

In regard to the February 23 incident involving J.J., [Petitioner] was charged with forcible rape (Count I), forcible sodomy (Counts II, III, IV, and V), kidnapping (Count VI), second-degree robbery (Count VII), and sexual abuse (Count VIII). In regard to the May 23 incident involving R.H., [Petitioner] was charged with attempted forcible rape (Count IX), felonious restraint (Count X), and second-degree robbery (Count XI). The trial court ordered all of the charges, which were contained in two separate indictments, joined for purposes of trial, and overruled [Petitioner]'s motion to sever the charges.

[Petitioner] testified that both J.J. and R.H. were lying about the attacks. [Petitioner] testified that he had known J.J., whom he repeatedly referred to as the wrong name even though his counsel and the court attempted to correct him, since 2001. J.J. testified on rebuttal that she lived in Illinois and Indiana in 2001 and that she first moved to St. Louis in 2002. [Petitioner] referred to J.J. as a crack smoker and friend with whom he liked to get high. [Petitioner] claimed that he had had sex with J.J. at least one time before the February 23 incident. He testified that he didn't force J.J. to have sex, but that it was consensual.

[Petitioner] testified that he helped R.H. fix her car and that she voluntarily gave him $20.00 for the repairs and that he gave her $5.00 in change. [Petitioner] denied that he had tried to rape R.H. or that he had kissed her neck and asked for sex.

(ECF No.10-2, Ex. D at 2-4).

On October 9 -10, 2003, a jury returned a verdict of guilty on one count attempted rape, one count felonious restraint, one count second-degree robbery, one count forcible rape, four counts forcible sodomy, one count kidnapping, and one count sexual abuse. (ECF No. 10-2, Ex. C at 178-81). On the December 12, 2003, the trial court, having found Petitioner to be a prior and persistent offender,[1] sentenced him to 25 years imprisonment for the forcible rape conviction, 25 years imprisonment on each of the forcible sodomy convictions, 15 years imprisonment on the kidnapping conviction, 15 years on the sexual abuse conviction, 15 years imprisonment on the attempted forcible rape conviction, 15 years on the felonious restraint conviction, and 15 years on the second-degree

---

[1] Under Missouri's prior and persistent offender statute, sentencing is removed from the jury to the trial court if the offender has "pleaded guilty to or has been found guilty of two or more felonies committed at different times." Mo. Rev. Stat. § 588.016 (2003).

3

robbery conviction. *Id*. at 186-92. The trial court ordered various sentences to run concurrently and consecutively, resulting in a total sentence of 40 years imprisonment.

Petitioner appealed to the Missouri Court of Appeals, which affirmed his convictions. *State v. Cody*, 155 S.W.3d at 772; (ECF No. 10-2, Ex. D). Petitioner then timely filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (ECF No. 10-2, Ex. G). The motion court conducted an evidentiary hearing, and on June 1, 2007, denied the motion. *Id*. at 111-29. The Missouri Court of Appeals affirmed the denial of Petitioner's motion for post-conviction relief. *Cody v. State*, 255 S.W.3d 535 (Mo. Ct. App. 2008) (per curiam); (ECF No. 11, Ex. H).

Petitioner then filed this pro se Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [ECF No. 1]. In his petition, he raises eight grounds for relief:

> 1) The trial court erred in denying his motion to sever the charges related to the February 23 incident and the May 23 incident.
>
> 2) The trial court erred in denying his motion for judgment of acquittal with respect to the attempted forcible rape count because the State did not prove a "substantial step."
>
> 3) The trial court erred in allowing a jury instruction that omitted that the jury had to find Petitioner acted "knowingly" in committing felonious restraint.
>
> 4) The trial court erred in denying his motion for a mistrial after the prosecutor read a portion of the indictment to rebut Petitioner's attempt at impeaching accusing witness, R.H.
>
> 5) He received ineffective assistance of counsel because trial counsel failed to move to strike venirepersons Shah and Tibbs for potential bias.
>
> 6) He received ineffective assistance of counsel because his trial counsel did not reasonably prepare Petitioner to testify.
>
> 7) He received ineffective assistance of counsel because his trial counsel failed to investigate and call witness Richard McGowan to testify that Petitioner was acquainted with accusing witness J.J, which would bolster Petitioner's defense theory.

4

> 8) He received ineffective assistance of counsel because his trial counsel was allegedly ill-prepared and inattentive, fell asleep during the reading of jury instructions, delivered a poor closing argument, and called accusing witness J.J. by the wrong name.

Magistrate Judge Noce issued a Report and Recommendation [ECF No. 18], which rejected each of Petitioner's eight grounds for relief on the merits and suggested that the Court deny the Petition. Petitioner then objected to each of the Magistrate Judge's findings contained within the Report and Recommendation [ECF No. 21].

## II. LEGAL STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotations omitted); *see also Yanez v. Minnesota*, 562 F.3d 958, 962 (8th Cir. 2009) ("A state court decision is contrary to clearly established Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or . . . decides a case differently than the Court has on a set of materially indistinguishable facts.") (internal quotations and citations omitted). Under § 2254(d)(2), a state

court decision is based on an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004) (internal citations omitted).

## III. FEDERAL PROCEDURAL REQUIREMENTS

### A. *Exhaustion of State Law Remedies*

A federal district court cannot grant federal habeas corpus relief under 28 U.S.C. § 2254 to "a person in custody pursuant to the judgment of a State court," "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."). In order to determine if the exhaustion requirement has been met, "the court must determine if the petitioner fairly presented 'the federal constitutional dimensions of his federal habeas corpus claim to the state courts.'" *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir. 1988) (quoting *Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir. 1988)). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile state remedies', through which the petitioner can present his claim." *Id.* (quoting *Laws*, 834 F.2d at 1412). This Court agrees with Magistrate Judge Noce, and finds that Petitioner has exhausted each of his eight claims, either by presenting them to a state court or because there are no available state remedies.

### B. *Procedural Default*

"A section 2254 applicant's failure to raise a claim in state post-conviction proceedings results in procedural default of that claim." *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005); *see also Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007) ("Claims that have not been

6

presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted."). "To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording such courts a fair opportunity to apply controlling legal principles to the facts bearing upon [the] claim." *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotations and citations omitted; alteration in original). "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." *Id.* at 1021 (internal quotations omitted). The Court finds Petitioner has properly raised each claim in state court on direct appeal or through his post-conviction relief proceeding and, therefore, the Court will review the merit of each claim.

## IV. DISCUSSION

The Court conducted a de novo review of Petitioner's objections. *Lothridge*, 324 F.3d at 600. In doing so, the Court has carefully reviewed Petitioner's objections, which essentially renew his arguments for habeas relief, the detailed Report and Recommendation, the Missouri Court of Appeals's opinions, and the contents of his two legal files. The Court finds that the Magistrate Judge has properly applied federal law to each of Petitioner's claims. Moreover, a thorough de novo examination of the state court proceedings leads the Court to concur that the state courts' factual findings are supported by the record. The Court concludes that Petitioner has provided no basis to depart from the Report and Recommendation. Therefore, Petitioner's objections will be overruled, and the Court will adopt the Magistrate Judge's Report and Recommendation in its entirety, as supplemented by this Court's independent analysis.

### A. Ground One

Petitioner contends that the Magistrate Judge misapplied federal law by holding that Petitioner had not shown that joinder of the charges relating to the February 23 incident and the May 23 incident was erroneous, or that denying severance was error. The Court finds no such error. Petitioner is not persuasive in showing that the joinder or lack of severance was fundamentally unfair. *Wharton-El v. Nix*, 38 F.3d 372, 374 (8th Cir. 1994). The Missouri Court of Appeals noted, and the record supports, that the incidents were sufficiently similar to warrant joinder. (*Cody*, 155 S.W.3d at 772; ECF No.10-2, Ex. D at 10-11). In addition, although the offense arose from two different incidents and included multiple counts of various sex-related crimes, the case was not overly complex to confuse the jury. *Id*. at 11. Petitioner provides no evidence that the jury was confused by his two theories of defense – that he had consensual sex with J.J. and he was only helping R.H. with her car. Therefore, he has not met his burden to show that the joinder and lack of severance was fundamentally unfair. Petitioner's objections regarding ground one will be overruled.

### B. Ground Two

Petitioner claims that the Magistrate Judge misapplied federal law when it found no error in the trial court's denial of his motion for judgment of acquittal with respect to the attempted forcible rape count. At trial and on appeal, Petitioner contended that acquittal on this count was warranted because the State allegedly did not prove a "substantial step" toward raping R.H. Petitioner does not cite or even allude to any federal law in this objection. Petitioner actually contests the trial court's factual findings regarding the evidence of a substantial step, and not the Magistrate Judge's application of law. (ECF No. 21 at 4) ("There is not one lick of evidence that indicates what type of sex [Petitioner] required from the victim[.]").

8

A state court's factual findings are presumptively correct and are deemed erroneous only if they are not supported by the record. *Ryan*, 387 F.3d at 790. R.H. testified that Petitioner grabbed her, kissed her on the side of her neck, and told her that he wanted sex. (ECF No. 10-2, Ex. J, Tr. 443-44). She also testified that she heard Petitioner unzip his pants. *Id*. These facts all support the jury's conclusion that Petitioner made a substantial step to rape R.H. under Missouri law, and therefore, support the trial court's denial of the motion for acquittal on this ground.[2] Petitioner's objection will be overruled.

## C. Ground Three

The Court will next consider Petitioner's objection regarding an erroneous jury instruction. Petitioner claims that the Magistrate Judge misapplied federal law by overlooking the due process requirement that the government prove beyond a reasonable doubt each element of the crime charged. Petitioner asserts that "there was no evidence that [he] knew he was restraining [R.H.], when he was acting the way he was." (ECF No. 21 at 6). Petitioner also contests the Missouri Court of Appeals's finding that "[Petitioner]'s mental state was never an issue." (ECF No. 10-2, Ex. D at 6). He states that the instructional error and this appellate finding deprive him of due process.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A jury instruction that relieves the government of this burden violates due process. *Francis v. Franklin*, 471 U.S. 307, 313 (1985).

> Generally, issues relating to jury instructions in state-court proceedings involve "the application and interpretation of state law." *Louisell v. Dir. of Iowa Dept. of Corrections*, 178 F.3d 1019, 1022 (8th Cir.1999) (citing *Estelle v. McGuire*, 502 U.S.

---

[2] A "substantial step" is conduct that is "strongly corroborative of the firmness of the actor's purpose to complete the commission of the crime." Mo. Rev. Stat. § 564.011.1; *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. 1999) (en banc).

9

> 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). An instruction correctly setting forth state law does not, however, necessarily satisfy due process concerns. *Id*. We may grant habeas corpus relief when a "jury instruction constituted 'a fundamental defect' that resulted 'in a complete miscarriage of justice, [or] an omission inconsistent with rudimentary demands of a fair trial.'" *Id*. (citations omitted).

*Liggins v. Burger*, 422 F.3d 642, 651 (8th Cir. 2005).

Instructional error occured during Petitioner's trial: the trial court erred in allowing a jury instruction that omitted that the jury had to find Petitioner acted "knowingly" in committing felonious restraint against R.H. However, not all instructional error is prejudicial. Under Missouri law, "where a verdict director effectively omits an essential element of the offense, such an instruction rises to the level of plain error if the evidence in the case fails to establish the existence of the omitted element beyond serious dispute." *State v. Neal*, 328 S.W.3d 374, 383 (Mo. Ct. App. 2010) (internal citations omitted). Similarly, under federal law, "a defendant's conviction may be affirmed where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence . . . and no rational juror, if properly instructed, could find that the element was not satisfied." *U.S. v. Johnson*, 652 F.3d 918, 923 (8th Cir. 2011) (internal quotations and citations omitted). To affirm the conviction, the government must have presented "undisputed," "uncontradicted," and "unimpeached" evidence establishing the statutory element at trial. *Id*.

In this case, Petitioner's theory of defense as well as the overwhelming evidence presented at trial render this instructional error harmless. Petitioner's defense to the felonious restraint count was that he never restrained R.H., not that he lacked the requisite mens rea. R.H. testified that Petitioner chased her, grabbed her by the throat and hair, pulled her by the neck, and forcibly kissed her neck. (ECF No. 10-2, Ex. J, Tr. 443-44). Any rational juror could interpret this testimony as showing that Petitioner knowingly and willfully restrained R.H. Petitioner contested this testimony

by saying that R.H. was lying. The jury was free to believe or disbelieve either witnesses' testimony. Therefore, the instructional error did not create a fundamental defect resulting in a miscarriage of justice. *Liggins*, 422 F.3d at 651. Petitioner's objection will be overruled.

### D. *Ground Four*

Petitioner objects to the Magistrate Judge's finding that the trial court did not err in denying his motion for a mistrial after the prosecutor read a portion of the indictment to the jury in an effort to rebut Petitioner's attempt at impeaching the accusing witness, R.H. Specifically, he alleges that the Magistrate Judge incorrectly found that Petitioner's trial counsel made unsubstantiated allegations that warranted corrective action by the prosecutor. (ECF No. 21 at 8).

Both federal and Missouri courts allow "the use of otherwise inadmissible evidence on redirect examination to clarify or complete an issue opened up by defense counsel on cross-examination." *United States v. Womochil*, 778 F.2d 1311, 1315 (8th Cir. 1985); *State v. Taylor*, 298 S.W.3d 482, 493 (Mo. 2009) (en banc) (defining the curative admissibility doctrine). In this case, Petitioner's counsel asked an unsubstantiated question—whether R.H. had told anyone before that Petitioner had kissed her neck. (ECF 10-2, Ex. J at 452-53). R.H.'s allegation that Petitioner kissed her is in the indictment and, therefore, the question was misleading and unsubstantiated. The prosecutor was entitled to rebut this unsubstantiated allegation. The Magistrate Judge was correct to find that Petitioner's line of questioning was misleading or unsubstantiated. Moreover, his conclusion that the trial court acted within its discretion is also correct. Petitioner's objection will be overruled.

### E. *Ground Five*

In grounds five through eight, Petitioner claims ineffective assistance of counsel. To prove ineffective assistance of counsel, a petitioner must demonstrate: (1) that her counsel's performance

11

was deficient due to "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) that this "deficient performance prejudiced the defense" because "counsel's errors were so serious" they deprived petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1987). Both prongs of the test must be satisfied in order for the claim to succeed, and if a petitioner fails to make a sufficient showing under one prong, the court need not address the other. *Id.* at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating whether an attorney's performance was so deficient that it failed to meet the Sixth Amendment's guarantee of effective counsel, the Court applies "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Petitioner bears the burden of proving counsel's performance was unreasonable, considering all of the circumstances. *Id.* There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"[R]eview of the state court's determination that [Petitioner] has not proved an ineffective-assistance claim is 'twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel.'" *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (quoting *Link v. Luebbers*, 469 F.3d 1197, 1202 (8th Cir. 2006)).

In ground five, Petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to move to strike venirepersons Shah and Tibbs for potential bias. Petitioner now objects to the Magistrate Judge's finding that Petitioner's trial counsel's performance was reasonable, and that Petitioner failed to show prejudice in light of the fact that his trial never questioned venirepersons Shah and Tibbs about their potential bias.

The record clearly demonstrates that Petitioner's counsel acted reasonably in light of the prosecutor's questioning and the venirepersons' answers during voir dire. The prosecutor asked Shah and Tibbs if their experiences would hamper their ability to be fair and impartial. (ECF No. 10-2, Ex. I at 40, 69-71). Both Shah and Tibbs responded that they could be impartial. *Id.* A reasonable defense attorney would not necessarily repeat the same question asked by the prosecutor and satisfactorily answered by members of the venire panel. Because the venirepersons answered that they could be impartial, Petitioner's counsel had no ground upon which to move to strike those jurors for cause.

Petitioner also asserts that his counsel should have used peremptory strikes to strike Shah and Tibbs. An attorney's use of peremptory strikes are a matter of trial strategy, which are virtually unchallengeable. *Loefer v. U.S.*, 604 F.3d 1028, 1030 (8th Cir. 2010) ("Decisions involving trial strategy are virtually unchallengeable."). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 689, and Petitioner has not rebutted this presumption. Absent a showing that Petitioner's performance was deficient, Petitioner cannot show ineffective assistance of counsel. Petitioner's objection will be overruled.

### F.     *Grounds Six and Eight*

In grounds six and eight, Petitioner contends that he received ineffective assistance of counsel because his trial counsel did not reasonably prepare Petitioner to testify, he fell asleep during the reading of jury instructions, he delivered a poor closing argument, and he called accusing witness J.J. by the wrong name. Petitioner objects to the Magistrate Judge's conclusion that Petitioner presented no evidence that the state court's conclusions were erroneous.

Petitioner's arguments ignore the deference this Court must give to the state court's factual findings. Under habeas review, the factual findings of the state court are presumed to be true. 28 U.S.C. § 2254(d)(2). The state trial court made a finding that it never observed counsel sleeping, which we presume to be true unless Petitioner rebuts the finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner provides no rebuttal evidence. Regarding the allegation that Petitioner's counsel called accusing witness J.J. by the wrong name, the record shows that counsel only added an "s" to the end of the witness's last name. The Missouri Court of Appeals, properly deferring to the state motion court, found that this misstatement was not significant or noticeable. (ECF No. 10-2, Ex. H at 12). The Court defers to this finding.

In addition, the Court has reviewed the transcript from Petitioner's post-conviction relief hearing (ECF No. 10-2, Ex. K), the post-conviction relief deposition of Petitioner's counsel (ECF No. 10-2, Ex. G at 61-105), counsel's closing argument (ECF No. 10-2, Ex. J at 578-92) and Petitioner's trial testimony (ECF No. 10-2, Ex. J at 470-502). Those parts of the record show that counsel was prepared, delivered a coherent closing argument, and that he reasonably prepared Petitioner to testify even though Petitioner performed poorly on the witness stand. The record supports the state court's findings. The record refutes Petitioner's claim that counsel was not prepared and, therefore, counsel's performance was not deficient. Absent a finding of deficient performance, Petitioner's claim of ineffective assistance counsel based on poor trial preparedness fails. Petitioner's objection is overruled.

## G.     *Ground Seven*

In ground seven, Petitioner argues that he received ineffective assistance of counsel because his trial counsel failed to investigate and call witness Richard McGowan to testify. Petitioner contends that McGowan would have testified to facts that would bolster Petitioner's defense theory

14

that J.J. consented to sex. Specifically, McGowan would testify that Petitioner was acquainted with accusing witness J.J., that J.J. did drugs, and the J.J. moved to St. Louis before 2002. Petitioner now objects to the Magistrate Judge's finding that he failed to prove that his counsel's decision not to call McGowan was unreasonable and that Petitioner has not shown *Strickland* prejudice.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, a reviewing court must discount hindsight by considering "'counsel's perspective at the time' investigative decisions are made, and by giving a 'heavy measure of deference to counsel's judgment.'" *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (quoting *Rompilla v. Beard*, 545 U.S. 374 381 (2005)). Counsel's decision not to interview McGowan must be examined based on the information available to counsel at the time the decision was made. *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994)).

Both the Missouri Court of Appeals, state trial judge, and the Magistrate Judge found that Petitioner failed to prove both *Strickland* prongs. The record affirms this conclusion. Counsel's deposition reveals that McGowan's name was listed as potential witness in Petitioner's public defender's case file. (ECF No. 10-2 Ex. G at 86-87). Counsel admitted that he never investigated this witness. *Id.* at 87-90. This failure to investigate McGowan does not render counsel ineffective because McGowan's potential testimony would not likely change the outcome of Petitioner's trial. McGowan testified at Petitioner's post-conviction relief evidentiary hearing. (ECF No. 10-2, Ex. K). He testified rather inconsistently about the details surrounding Petitioner's alleged romantic

15

relationship with J.J. He also described J.J's physical appearance. *Id*. at 64-66. Both the prosecutor and the trial judge recalled her appearance to be radically different from McGowan's description.[3] *Id*. at 69-71. McGowan's testimony would not have been helpful to Petitioner's defense because his testimony lacked credibility and did not establish Petitioner's defense. An ineffective assistance of counsel claim based on a failure to call a witness who might establish a defense may be rejected if that witness would not have established the defense or is not credible. *See Helmig v. Kemna*, 461 F.3d 960, 967 (8th Cir. 2006) (rejecting ineffective assistance of trial counsel claim for failure to call witnesses based, in relevant part, on state courts' findings that witnesses would not have provided defense or were not credible). Therefore, Petitioner has not shown prejudice and his claim of ineffective assistance of counsel fails. Neither the state courts nor the Magistrate Judge unreasonably applied *Strickland* or its progeny. Petitioner's objection will be overruled.

## V. CONCLUSION

The Court has reviewed the Magistrate Judge's findings to which the Petitioner filed objections, and concludes that Petitioner's objections are without merit. The state court did not violate the treaties, laws, or Constitution of the United States, and therefore habeas relief is not warranted in this case. Petitioner's objections are overruled. The Court hereby sustains, adopts, and incorporates herein the Magistrate's Report and Recommendation, as supplemented by this Court's independent analysis.

---

[3] During the post-conviction relief hearing, after McGowan testified that J.J. was five feet ten inches, the trial court said, "I don't remember [J.J.] exactly. I do remember that she was shorter rather than taller. I remember that she was definitely shorter than five feet ten inches. And I remember her build as being medium." Petitioner's post-conviction relief attorney and the prosecutor mentioned that J.J.'s height was actually around four feet eleven inches.

## VI. CERTIFICATE OF APPEALABILITY

A certificate of appealability may only be issued when "the applicant has made a substantial showing of the denial of a constitutional right." *See Slack v. McDaniel*, 529 U.S. 473, 473 (2000); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). Petitioner has made no such showing. Furthermore, the Court does not believe that reasonable jurists might find the Court's decision debatable or wrong, for purposes of issuing a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A). *Slack*, 529 U.S. at 483-84. Therefore, the Court shall not issue a certificate of appealability as to any claim raised in the Petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner James Cody Jr.'s Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1] is **DENIED**.

Dated this  26th  day of March, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE